Although I did so with several caveats, I originally concurred with the majority's establishment of a bifurcated trial where a plaintiff seeks punitive damages, because I believe that such a procedural change is within this Court's authority. However, based upon the judicial review of punitive damages awards required by BMW of North America, Inc.v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), I agree with the majority that the bifurcation process is no longer necessary to protect the tortfeasor's due process rights. I originally dissented from the majority's holding requiring apportionment of a punitive damages award between the plaintiff and the State, because I did not believe that it was within this Court's authority to require that apportionment. For that reason, I now concur with the majority's holding overruling the apportionment requirement.
As to the issue of the reasonableness of the punitive damages award, I write to emphasize the well-established principle that "exemplary damages imposed on a defendant should reflect 'the enormity of his offense,' " BMW,517 U.S. 559, ___, 116 S.Ct. 1589, 1599, 134 L.Ed.2d 809 (1996), quotingDay v. Woodworth, 54 U.S. (13 How.) 363, 371, 14 L.Ed. 181
(1852). The enormity of Life of Georgia's offense against Daisey Johnson and other elderly and financially vulnerable citizens in this state is clearly revealed in this case. Indeed, virtually every aggravating factor associated with particularly reprehensible conduct is presented here. The evidence reveals that Life of Georgia marketed its Medicare policies through a pattern of *Page 535 
trickery and deceit, carried out with affirmative acts of misconduct against those least able to defend themselves. Life of Georgia's agent intentionally exploited Mrs. Johnson's age, poverty, and lack of education, in order to sell her a worthless policy that for three years cost her almost a third of her monthly fixed income. Moreover, it is obvious that Life of Georgia regularly trained its agents to "get the money" from elderly insureds by playing upon their fears and emotions, while deliberately failing to teach its agents even the rudiments of the insurance product they were driven to sell. There is evidence that, as of the date of the verdict in this case, Life of Georgia had done nothing to correct its misconduct, and that it was undeterred by an adverse verdict returned in the Mobile Circuit Court, based upon similar misconduct. See Foster v. Life Ins. Co. ofGeorgia, 656 So.2d 333 (Ala. 1994). Life of Georgia is a repeat offender, and I believe that, as the United States Supreme Court suggests, "strong medicine is required to cure the defendant's disrespect for the law." BMW, 517 U.S. at ___,116 S.Ct. at 1599. I agree that a punitive damages award of $3 million is the proper dose.