HENRY H. CAMPBELL, *Appellant* v. THE STATE OF KANSAS, *Appellee.*

*Error from Leavenworth County.*

A refusal of the court below to charge the jury under the circumstances of the case in an action for murder, that " if the jury believe from all the evidence that the witness Molly Brown" [principal witness against defendant, who stood indicted for the same offense,] " has testified falsely in respect to any material fact, it is their duty to disregard the whole of her testimony, "*held* error; that language embodying a sound principle of law

[25 Mo., 554,] and especially as the record shows that the defendant might have been prejudiced by the charge, and *semble*, that it would not be sufficient to charge that the jury "are *authorized* to disregard such evidence."

The presumption that a witness will declare the truth, ceases as soon as it manifestly appears that he is capable of perjury. [15 *Ohio State*, 55-6; 7 *Wheat.*, 283.]

The record in this case involved the same questions involved in the next preceding case of Craft *v.* The State, and in addition, other questions arising from the charge of the court to the jury.

The court charged among other things that:

*a.* "If the jury believe from the evidence that any witness knowingly and corruptly testified falsely as to any of the material facts in the case, the jury may disbelieve all of the testimony of such witness."

*b.* "That the credibility of a witness is a question for the jury to decide. A jury may still believe a witness where his or her testimony is corroborated by other evidence, although his or her character has been impeached. The jury are to say what evidence is to be believed and what is not, after hearing and considering all the evidence in the case."

*c.* If the jury believe from the evidence, beyond a reasonable doubt, that Craft killed Gallagher with a slingshot, as stated by witness, Molly Brown, and that the defendant was there present, aiding and assisting Craft in *this killing* the deceased, then the defendant would be as guilty as though the blows struck by Craft had been inflicted by himself."

The court was by defendant below asked to charge among other charges, that "If the jury believe the witness, Molly Brown, has willfully testified falsely in respect to any material fact, it is their duty to disregard the whole of her testimony." This charge was refused.

*Hemingray & Fitzwilliam*, for appellant.

*H. W. Ide*, County Att'y for the State.

*Hemingray & Fitzwilliam*, submitted:

1st.   An indictment, signed by a person styling himself " *District Attorney*," is invalid; there being at the time of finding the indictment no such officer authorized to so sign under the statutes.   *Chap.* 31 *Laws* 1864, *p.* 58; *Sec.* 84 *Code Crim. Proc.*, 250.

*a.* A bill of indictment, to be good in law, must be signed by the proper officer appointed to prosecute on behalf of the state.   *Teas.* v. *State*, 7 *Humph.*, 174; *Section* 281, *U. S. Crim. Dig.*, 353; *Boyd* v. *State, sec.* 53, *U. S. Crim. Dig.*, 691.

*b.* The word *substantial* in the 96th and 276th sections of the Criminal Code, means that those defects specified in the statute, are such as do not tend to the prejudice of any material rights of the defendant, and should be limited in its application to the defects therein enumerated; for, upon the well recognized rule of construction, where a statute affirmatively enumerates what is not such a defect or imperfection which will tend to the prejudice of the substantial rights of a party, it must be construed as being restricted to the class of defects enumerated; and if any arise without the enumerated list, then the court should affirm their existence in favor of the party.

" A specification of particulars is an exclusion of generals."   *State* v. *Pemberton*, 30 *Mo.*, 378.

*c.* A statute which extends human liberty, is to be liberally construed, but a statute which restrains it, is to be strictly construed.   1 *Blk. Com.*, 88, *note*; 12 *John*, 373; 4 *Sheply*, 255.

If the rights of a party have been violated, the court has no right to weigh the *quantum* of injury sustained by the party.   *Mat. Montgomery*, v *State*, 3 *Kans.*, 263.

The term " substantial rights," as used in our statute, is certainly a very unfortunate expression, by reason of its

uncertainty. *Generale nihil certum implicat*; and in criminal proceedings it should be narrowed down to well defined limits by judicial decisions, rather than to be nourished into a further maze of uncertainty than now surrounds its application.

In California it has been decided that a statute which authorizes a court "to render such judgment as substantial justice shall require," means, that "the court shall render substantial, legal justice, ascertained and determined by fixed rules and positive statutes, and not the abstract varying notions of equity entertained by each individual or judge." 1 *Cal.*, 94.

2d. The court erred in not charging the jury as requested by defendant.

*a.* If the jury believe from all the evidence, that the witness Molly Brown, has willfully testified falsely in respect to any material fact, it is their duty to disregard the whole of her testimony.

This instruction should have been given to the jury. It is simply the ancient maxim—*falsus in uno, falsus in omnibus*—sought to be applied to the evidence of the witness, Molly Brown. *See* 1 *Starkie Ev.*, 583; *The Santissima Trinidad*, 8 *Wheat.*, 283; *Stoffer* v. *The State*, 15 *Ohio St.*, 55-6-7; *State* v. *Dwire*, 25 *Mo.*, 554; *Gillett* v. *Wimer*, 23 *Id.*, 78; *Roth* v. *Wells*, 29 *N. Y.*, 487; *Dunlap* v. *Patterson*, 5 *Cow.*, 243; *Sec.* 194 19 *U. S. Dig.*, 715; 3 *Gra. & Wat. New Trials*, n. 2, 1215; *Newell* v. *Wright*, 8 *Conn.*, 323; *Hairgrave et al.* v. *Miller et al.*, 16 *O.*, 338; 1 *Gilb. Ev.*, 291, 293, *note.*

Upon reason and authority, we urge that the rule of law as given by the court, marked "*a*" and "*b*" is not the correct one in this case. It applies generally to any witness. The instruction we asked, is a rule for the jury in determining what credence to give a particular witness, one who admits her guilty complicity in a crime charged. The court states that "the jury *may* disbelieve all of the

testimony," &c., and then that the "jury may still believe a witness where his or her testimony is corroborated by other evidence, although his or her character has been impeached."

The jury are charged that they may disregard the testimony of a perjured witness; then, that they may still believe such a witness if his or her statements are corroborated by other evidence.

Can it be said that the jury were not influenced in giving their verdict against the defendant, by reason of the above charge ?

Would not this charge influence the jury to convict the defendant upon the testimony of the witness Molly Brown, who acknowledges guilty participation in the crime charged, and is contradicted in material parts of her statements by other witnesses testifying for the State; an accomplice, desiring to escape from prosecution on an indictment for the same murder, under promise of release, made by the prosecutor for the State, publicly acknowledging her shame and prostitution of person, falsehood in the very name she bears, her person reeking with pollution, her character notoriously the blackest and most foul, her soul bearing the dark stain of perjury, as well as of human blood, according to the evidence of many respectable citizens who will not believe her on oath.   With all these facts appearing, the court instructs the jury that they may believe such a witness.

If ever there was a case in which the court should have given the law to the jury, contained in the instruction asked by defendant, if ever facts existed upon which the court could say, this is law, and should have been given, it is this case, as presented by the record.

b. " That before the jury can convict the defendant upon the testimony of Molly Brown, they should be satisfied from all the evidence that her testimony is fully corroborated as to every material fact; and it is not enough that

the corroboration goes generally to the main question at issue."

Much of the reasoning on the first instruction refused, applies to the one under consideration. This witness stood before the court an admitted accomplice. Courts have ever considered it their duty to advise a jury to acquit, where there is no evidence other than the uncorroborated testimony of an accomplice. 2 *Starkie Ev.*, 12.

Then, when it is shown that this *particeps criminis* is an abandoned prostitute, contradicted by other testimony in material parts, not to be believed on oath, is not the rule sought to be applied to this case correct? Further: If the corroboration relates to some portion of the testimony, material to the issue, does it follow that she *must*, or even *may*, be believed as to the other material facts testified to by her alone? Certainly not.

No one should be convicted by inference, unless that inference is the necessary, logical result from the corroborated facts testified to by the *particeps criminis* and credited by the jury.

A juror may entertain a reasonable doubt as to the truth of a fact testified to by an accomplice, as well as to the existence of such fact.

Yet, the juror who honestly entertains a rational doubt, either as to the truth of an uncorroborated statement of an accomplice, or as to the existence of such material fact, is concluded from exercising his reason and conscience, when instructed by the court that he "*must* believe, from the evidence, that she is corroborated in her testimony by some other witness, as to some fact or circumstance material to the issue, and going to show the defendant's guilt," and that "she should be corroborated in some material fact, or facts, connecting the defendant with the commission of the offense; but that it is not necessary that she should be corroborated in all material facts before they are justified in finding a verdict of guilty." *Throwdale* v. *State*, 9 *Humph.*, 411; *Sec.* 52 *U. S. Cr. Dig.*, 706.

A verdict based on the evidence of an infamous witness should not be allowed to stand. *Allen* v. *Young*, 6 *Monroe*, 136.

*c.* If the court instructed the jury correctly as to the law on this point, yet we contend that the accomplice was not corroborated; and that in the absence of corroborative evidence, the prisoner ought to have been acquitted.

The corroboration of an accomplice's evidence ought to go to the identity of the prisoner; i. e., it should satisfy a jury that the prisoner is the person who committed the crime with which he is charged by the accomplice. *Powell Ev.*, 32-3; *Com.* v. *Bosworth*, 22 *Pick.*, 400; *Ray* v. *State*, 1 *Green*, 316; *Johnson* v. *State*, 4 *Id.*, 65; *Upton* v. *State*, 5 *Iowa*, 466; *Allen* v. *State*, 10 *Ohio St.*, 304; *State* v. *Willis*, 9 *Iowa*, 582; 1 *Starkie's Ev.*, 40; *State* v. *Howard*, 32 *Vt.*, 380; *People* v. *Eckert*, 16 *Cal.*, 369.

3d. The instruction marked "*c*" given, intimates a conclusion from facts, and is a mixed charge of law and conclusion of fact, and therefore error. *Carl Horne* v. *The State of Kans.*, 73.

Did not this instruction assume, that in law, there was guilt in Craft's killing Gallagher, and if defendant assisted, that he would be as guilty as the principal?

Does not the court assume that there was a degree of guilt, in law, in the act of killing?

*b.* Where the judge charges the jury, in writing, he must state to them all matters of law which are necessary for their information in giving their verdict. *Sec.* 215, *Crim. Pro.*

If he fails to so charge, it is error, and this court will reverse the case.

The jury were not instructed specifically as to the different degrees of homicide included in the charge upon which defendant was tried. *Payne* v. *Com.*, 1 *Met.*, (*Ky.*) 370; *Waters* v. *Bristol*, 26 *Com.*, 398; *Ritte* v. *Com.*, 18 *B. Mon.*, 35; *Higgens* v. *Lee*, 16 *Ill.*, 495; *Hadly* v. *State*,

7 *Mo.*, 609; *Lewis* v. *State*, 4 *Ohio*, 397; *State* v. *McDonnell*, 22 *Vt.*, 491; *People* v. *Potter*, 5 *Mich.*, 8.

4th.  *a.* There was error in excluding the indictments of Molly Brown and Lu Ferguson.   Defendant had a right to present this evidence for the purpose of affecting their credibility as witnesses.

"The party against whom a witness is produced has a right to show everything which may, in the slightest degree, affect his credit.   *Camron* v. *Montgomery*, 13 *Serg. & Rawl*, 132.

*b.*   The material facts in support of the charge are testified to by but one witness, and she a person as little worthy of belief as was ever witness in any court; and we challenge the records of criminal and civil jurisprudence to produce a witness less credible than Molly Brown is shown to be by the record in this cause.   A new trial should have been granted.   5 *Smedes & Marshal*, 664, (*Crim. Dig.*, 169, *sec.* 372,) *Dowling* v. *State*; 14 *Mo.*, 413, (*Id.*, 171, *sec.* 389,) *Fitzgerald* v. *State*; 11 *Shepley*, 139, (*Id.*, 171, *sec.* 397,) *State* v. *McAlister*; 14 *Wend.*, 111, (*Id.*, 176, *sec.* 157,) *People* v. *White*; 13 *Iredell*, 184, (*Id.*, 179, *secs.* 490-1,) *State* v. *Arnold*, 16 *Pick.*, 153, (*Id.*, 180, *sec.* 498,) *Com.* v. *Buzzell*; *Powell on Ev.*, 280; *Boyce* v. *Cheshire R. Road*, 42 *N. H.*, 97.

*By the Court,* SAFFORD, J.

The decision of this court in the case of Craft *v.* The State, just announced, practically determines this case, and renders a new trial necessary.   Such being the fact, we might well be content to simply refer to the reasoning in the former case, as fully sustaining our action here.

But in addition to the questions common to both cases, another point arises in this one, which we deem of too much importance to remain unnoticed, and especially since it may be likely to be again raised on a new trial herein.

On the trial of this cause in the court below, the defendant asked the court to charge the jury as follows:

" If the jury believe, from all the evidence, that the witness Molly Brown has testified falsely in respect to any material fact, it is their duty to disregard the whole of her testimony." The court refused so to instruct, and to this ruling the defendant by his counsel excepted.

In our opinion the language of the instruction embodies a sound principle of law, and as an examination of the record shows that it was fully warranted by the state of the evidence, and therefore applicable to the case, it ought to have been given to the jury. (25 *Mo.*, 554.) But to what extent such an error on the part of the court may have operated to the serious prejudice of the defendant, and which might be made to appear from a careful examination of all the testimony, it is perhaps unnecessary to inquire, inasmuch as the case must go back, as before stated, under the decision above referred to. Besides it is quite immaterial. It may however be remarked, that we think the defendant had reason to say that he was prejudiced by the action of the court in this regard, because he was denied the benefit of a just and proper rule of evidence, which he had a right to have declared in the form of an instruction to the jury, and to which he was entitled for what it was practically worth. If therefore no other reason existed for so doing, this case must be reversed on this account, and this too, although the jury might have believed that the witness Molly Brown had not been successfully contradicted. (25 *Mo.*, 554.) But it is strongly insisted that the rule laid down in this instruction goes too far, and invades the province of the jury, and that the courts should only advise them that they " may disregard, or that they are authorized to disregard " all the testimony of a witness who has been successfully contradicted as to a material fact. This view has hitherto been supported and adhered to by many respectable authorities which the counsel for the State have industriously collected and urged upon our notice. But

notwithstanding all which has been thus advanced, our confidence in the position we have taken on this question remains unshaken. It is founded in reason and justice, as we think, and is also well supported by authority. In 18 Starkie's Ev., 583, are to be found the following observations, bearing directly upon this question: "As the credit due to a witness is founded in the first instance on general experience of human veracity, it follows that a witness who gives false testimony as to one particular, can not be credited as to any, according to the legal maxim, "*falsus in uno falsus in omnibus.*" The presumption that the witness will declare the truth, ceases as soon as it manifestly appears that he is capable of perjury.

Faith in a witness' testimony cannot be partial or fractional. Where any material fact rests on his testimony, the degree of credit due to him must be ascertained, and according to the result, his testimony is to be credited or rejected.

So also in the opinion of the Supreme Court of Ohio, in Stoffer *v.* The State, (15 O. St., 556,) the court say: "Now, if, as this author says, the presumption that such a witness will speak the truth, is *wholly gone*, and for this reason his testimony is to be rejected, what in the nature of things can remain to submit to a jury from which they are to make up that complement of proof which establishes facts, as a foundation for the judgment of courts? Is not this yielding the witness partial or fractional credit? And that in the face of the fact, that before the eyes of this very tribunal which accords him credit, and in the very proceedings, he has committed willful and corrupt perjury. To say that facts may be found upon his testimony notwithstanding, or that they may be found in fact upon it, is a difference in degree only, and not in principle. The other evidence although in a greater or less degree corroborative of his, is yet supposed to be insufficient to establish the fact in issue, and

it is utterly impossible still to find the fact without giving credit to the perjured witness. But it is said he may still speak the truth upon other points, although perjured as to one or more. This is very true; very few men are so utterly false as not to be compelled, from the very exigencies of their being, to utter more truth than falsehood. But it must also be admitted that the motive which has prompted him to commit perjury in one part of his testimony, may, and is very likely to lead him to make it effectual, by falsifying other material points. At least it is left entirely uncertain whether he has uttered truth or falsehood, and it is not consistent with that moral certainty of the existence of facts which the law requires, before men are effected in their lives, liberty or property, to act upon what may be true or false, or to use such corrupt and deceptive instrumentalities in the pursuit of truth."

Upon the whole, we are inclined to agree with Hon. Justice STORY in his opinion in the case of The Santissima Trinidad, (7 Wheat., 283,) that where a party speaks to a fact, in respect to which he cannot be presumed liable to a mistake, courts are bound upon principles of law, morality and justice, to apply "*falsus in uno falsus in omnibus*," and, too, as with him, " what ground of judicial belief can there be left where the party has shown such gross insensibility to the difference between right and wrong, between truth and falsehood ?"

These views so carefully and yet so decisively expressed, meet with our hearty approval, as containing what is and ought to be the law applicable to all cases like the one under consideration.

Some other objections are made to the proceedings in this case, and urged by counsel, but as they concern such matters as will not be likely to occur again, we have thought it proper to pass them by. The judgment will be reversed and the court below ordered to sustain the motion for a new trial.

All the justices concurring.